**NOT FOR PRINTED PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| THE OHIO WILLOW WOOD COMPANY | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 9:07-CV-274 |
| v. | § | |
| | § | |
| THERMO-PLY, INC. | § | JUDGE RON CLARK |
| | § | |
| Defendant. | § | |

## ORDER DENYING DEFENDANT'S MOTION FOR ATTORNEY'S FEES

Plaintiff The Ohio Willow Wood Company ("OWW"), filed suit against Defendant Thermo-Ply, Inc. ("Thermo-Ply") alleging infringement of forty-four claims of United States Patent No. 7,291,182.[1] The '182 patent discloses prosthetic liners made from a fabric coated with gel or rubber that substantially conforms to an amputee's residuum when worn.[2] The court granted summary judgment in favor of Thermo-Ply on November 20, 2009, finding all asserted claims invalid as obvious. Doc. # 107. Thermo-Ply now moves for attorney's fees.

Because the court finds that this case is not exceptional, no award of attorney's fees is appropriate. Thermo-Ply's motion is denied.

---

[1]Third party Coastal Liners, Inc. ("Coastal Liners") subsequently intervened, claiming ownership rights to the '182 patent stemming from an assignment made by alleged co-inventor Dr. Carol Salusso. The court ultimately found Dr. Salusso not to be an inventor of the '182 patent. *See* Docs. # 104, 107.

[2]An amputee's "residuum" is the portion of the appendage that remains after amputation. It may also be referred to as a "stump."

## I. Background

The relevant background of the patent-in-suit and accused products can be found in the court's November 20, 2009 Orders Re: Inventorship [Doc. # 104] and Granting Defendant's Motion for Summary Judgment [Doc. # 105].

## II. Applicable Law

Thermo-Ply moves for attorney's fees under 35 U.S.C. § 285. The awarding of attorney's fees under Section 285 is an issue that is unique to patent law, and therefore governed by Federal Circuit law. *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1343 (Fed. Cir. 2001).

The district court can, in exceptional cases, award attorney's fees to the prevailing party in a patent infringement suit under Section 285. "The prevailing party must prove the case is exceptional by clear and convincing evidence." *Forest Group, Inc. v. Bon Tool Co.*, – F.3d –, 2009 WL 5064353 at *7 (Fed. Cir. Dec. 28, 2009); *see also Diego, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1368 (Fed. Cir. 2007) ("[T]he burden of proof for § 285 motions remains with the movant to show by clear and convincing evidence that the case is exceptional."). The determination of whether attorney's fees should be awarded under Section 285 is a two step process whereby the district court first determines whether a case is exceptional, then decides whether attorney's fees are appropriate. *Wedgetail Ltd. v. Huddleston Deluxe, Inc.*, 576 F.3d 1302,1304 (Fed. Cir. 2009).

Only a "limited universe of circumstances" will justify a finding that a patent case is exceptional: "inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." *Id.*; *see also Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1321-22 (Fed. Cir. 2006) ("Exceptional cases usually feature some material, inappropriate conduct related to the matter in

litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions. . . Absent misconduct in the litigation or in securing the patent, a trial court may only sanction the patentee if both the litigation is brought in subjective bad faith and the litigation is objectively baseless.").

### III. Analysis

Thermo-Ply argues that it is entitled to an award of attorney's fees under Section 285 on the grounds that OWW's claims were objectively baseless, because OWW did not have a reasonable belief that the inventions claimed by the '182 patent claims were valid.

A.  <u>Whether the Case is Exceptional</u>

Thermo-Ply argues that this case should be considered exceptional because OWW knew when it filed suit that the '182 patent was invalid. Thermo-Ply cites the following to support that theory: (1) a statement in the '182 patent that states the addition of vitamins was not new, although several dependent claims only add the limitation that the polymeric gel contain a vitamin; (2) an April 22, 1999 letter from Silipos, Inc.'s counsel to OWW's CEO Robert Arbogast, stating that Silipos had been selling its Silosheath since 1992, which was more than two years before the '182 patent's priority date; (3) the August 14, 2006 deposition of Jean-Paul Comtesse, a former officer of Silipos, in which he testified that the Silosheath was coated with a polymeric gel on only one side of the fabric cover and had been sold since 1993, and that Silipos had sold a fabric-covered gel liner called the "Single Socket Gel Liner" since before the '182 patent's priority date; (4) the April 19, 2007 deposition of OWW's expert witness, John Michael, in a different lawsuit where he testified that creating a fabric coated gel liner was obvious,

3

everyone in the industry had been trying to do so since the 1980s, and the Klasson patent—issued in 1990—taught fabric being applied completely or partially to the outside of a gel liner; (5) Thermo-Ply's answer, affirmative defenses, counterclaim, invalidity defenses, and presentation of a fabric covered gel liner made and sold by Thermo-Ply's owner in 1992-93 to the court during the May 21, 2008 Case Management Conference; and (6) the ex parte reexamination proceedings in the PTO where the '182 patent claims were rejected over the Klasson patent and the Silipos sheath.

The court rejects Thermo-Ply's arguments. A patent is presumed valid, 35 U.S.C. § 282, and "[i]t is beyond cavil that a district court does not have authority to invalidate a patent at its own initiative if validity is not challenged by a party." *Lannom Mfg. Co., Inc. v. United States Trade Com'n*, 799 F.2d 1572, 1579 (Fed. Cir. 1986); *see also Lisle Corp. v. A.J. Mfg. Co.*, 289 F. Supp. 2d 1048, 1050-51 (N.D. Ill. 2003). The burden to demonstrate invalidity is by clear and convincing evidence, and this burden is high. *See, e.g., Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002). In other words, regardless of whatever Thermo-Ply *thinks* OWW knew prior to or during litigation[3], the burden to actually prove that the patent was invalid

---

[3]Thermo-Ply argues that "[a] party (such as OWW) that has actual knowledge of facts that would invalidate its patent, simply cannot possess a good faith basis that such a patent is infringed." Def. Reply, at 2 [Doc. # 119]. The only evidence Thermo-Ply cites that would even remotely support a conclusion that OWW had "actual knowledge" of invalidity is the April 1999 letter from Silipos's counsel, Mr. Comtesse's August 2006 deposition, and Mr. Michael's April 2007 deposition. Taken together, all three indicate, at best, that the Silipos sheath was coated on one side with a polymeric gel, that this sheath was sold prior to the '182 patent's priority date, and that a fabric coated gel liner was obvious if the state of the art in the 1980s and the Klasson patent were considered. However, evidence of secondary characteristics sometimes may defeat even a strong prima facie case of obviousness. *See, e.g., Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1333 (Fed. Cir. 2009). Although this court ultimately disagreed, OWW asserted—and continues to assert on appeal—that there is evidence of secondary characteristics. In short, the evidence Thermo-Ply cites to does not support "actual knowledge" of the '182

rested on Thermo-Ply. Thermo-Ply has asserted no claim of litigation misconduct, or a Rule 11 infraction, on the part of OWW's attorneys.

Regardless of the PTO's determination during the ex parte reexamination—a reexamination that, despite Thermo-Ply's intimation to the contrary, was not yet final when these motion papers were submitted—it allowed the '182 patent in November 2007.[4] The PTO did so having considered both the Silipos sheath and the Klasson patent. Although the court ultimately granted summary judgment on the basis that the asserted claims of the '182 patent were obvious over the Silipos sheath and Klasson patent, the burden to demonstrate invalidity rested on Thermo-Ply.[5]

---

patent's invalidity on the part of OWW. "[A] patentee's infringement suit is presumptively in good faith and . . . this presumption can be rebutted only by clear and convincing evidence." *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 996 (9th Cir. 1979). On this record, Thermo-Ply has not rebutted the presumption.

[4]Thermo-Ply repeatedly implies that because OWW filed suit the day after the '182 patent issued and did so at least in part to protect its "market share and profits margin" the suit is somehow suspect. OWW was well within its rights to sue Thermo-Ply for infringement as soon as the patent issued, and could, in fact, be penalized under the equitable doctrine of laches if it waited too long before doing so. Further, patents are monopolies that are "designed to promote innovation by providing the right to exclude others from making, using, or selling an invention. They enable innovators to obtain greater profits than could have been obtained if direct competition existed. These profits act as incentives for innovative activities." *Biotech. Indus. Org. v. Dist. of Columbia*, 505 F.3d 1343, 1346 (Fed. Cir. 2007) (quoting H.R.Rep. No. 98-857, at 15 (1984)). There is no reason OWW should not protect its market share or profits by filing suit against companies that it believes infringe its property rights. This is the essence of patent protection.

[5]Although the court did suggest on at least one occasion that Thermo-Ply might have a good case that the '182 patent claims were invalid, the entire record was not before the court until Thermo-Ply submitted its motion for summary judgment. Again, the court cannot sua sponte invalidate a patent; regardless of the court's opinion on the patent's validity, Thermo-Ply had the burden to demonstrate invalidity.

5

The court therefore concludes that this case is not exceptional. Because it is not, attorney's fees are not appropriate. Thermo-Ply's motion is denied.

B.  Thermo-Ply's Objections to OWW's Submission of a DAW Cool Liner

In support of its response to Thermo-Ply's motion for attorney's fees, OWW submitted a DAW Cool Liner—which OWW alleges is exclusively manufactured by Thermo-Ply, and is evidence that OWW brought its infringement case in good faith because the Cool Liner contains every limitation of the asserted claims—to the court. Thermo-Ply suggests that this submission was ex parte. It requests that the court strike this submission and "admonish OWW's counsel for engaging in knowingly improper conduct." OWW responds that it did follow the correct procedure, as it provided Thermo-Ply with a copy of the letter accompanying its ex parte submission to the court and saw no need to give Thermo-Ply a sample of a product that Thermo-Ply itself exclusively manufactures.

As a general rule, substantive ex parte communications with the court are prohibited. *See, e.g., F.T.C. v. Namer*, 2007 WL 2974059 at *5 (5th Cir. Oct. 12, 2007). However, in this case, OWW provided notice of the submission to Thermo-Ply, if not a sample of the Cool Liner itself. Further, the court did not consider the DAW Cool Liner when determining whether this was an exceptional case. Thermo-Ply's motion focused on the propriety of OWW maintaining its infringement action in the face of alleged evidence that the '182 patent was invalid, not that the case was brought in bad faith because OWW could not have reasonably believed that Thermo-Ply's products infringed the asserted claims. The merits of OWW's infringement case are irrelevant to that analysis. Under these circumstances, the court declines to admonish OWW's counsel for the submission.

IT IS THEREFORE ORDERED that Defendant Thermo-Ply, Inc.'s Motion to Declare This Action Exceptional and for an Award of Attorney's Fees [Doc. # 112] is DENIED.

So **ORDERED** and **SIGNED** this **4** day of **February, 2010.**

_____
Ron Clark, United States District Judge