IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| THE OHIO WILLOW WOOD COMPANY | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | Civil Action No. 9:07-CV-274 |
| v. | § | |
| | § | |
| THERMO-PLY, INC. | § | JUDGE RON CLARK |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM AND ORDER DENYING JOINT MOTION TO VACATE**

Plaintiff The Ohio Willow Wood Company ("OWW") filed suit against Defendant Thermo-Ply, Inc. alleging infringement of United States Patent No. 7,291,182 ("the '182 patent"). This court granted Thermo-Ply's motion for summary judgment, holding that most of the claims of the '182 patent were invalid as obvious, and entered Final Judgment.

Both parties appealed. As part of the Federal Circuit's mediation program[1], the parties were ordered to participate in mandatory mediation. The parties reached a settlement agreement, contingent on vacateur of the portions of the above-referenced summary judgment order and Final Judgment that rendered much of the '182 patent invalid. The Federal Circuit granted the parties' joint request to remand so that this court could consider whether its invalidity judgment should be vacated. Two parties involved in other disputes with OWW over the '182 patent, or patents in the same family, then moved to intervene in this court.

---

[1] *See* United States Court of Appeals for the Federal Circuit, Appellate Mediation Program Guidelines (2008), *available at* http://www.cafc.uscourts.gov/mediation/mediation.html.

1

Finality of judgments and conservation of court resources are important policy reasons for making vacateur the exception when voluntary action by a party moots a case. However, a *per se* rule against vacateur of cases sent to court-ordered mediation may stifle the creativity of mediators and result in a waste of court and litigant resources. The issue is better resolved on a case-by-case basis. Here, this court's ruling, which found that most claims of the '182 patent are invalid, will, unless reversed on appeal, dispose of significant litigation in other forums. Overall, it will be more efficient to allow the case to proceed on appeal now than to require other courts and the United States Patent and Trademark Office ("PTO") to expend substantial time resolving related disputes over the '182 patent. Because those ongoing matters make it likely that the issues will come up on appeal later, vacateur is unlikely to result in any savings of time for the Circuit Court. The motion to vacate is denied.

**DISCUSSION**

**A.    The effect of mandatory mediation programs on analysis of vacateur**

In *United States Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 115 S. Ct. 386 (1994), the Supreme Court addressed the question of whether it should vacate a judgment of the Ninth Circuit Court of Appeals, which affirmed a district court judgment. The parties in *Bancorp*, a bankruptcy case, stipulated to a consensual plan of reorganization and agreed that confirmation of the plan constituted a settlement mooting the case. The settlement was entered into after certiorari was granted by the Supreme Court, and Bancorp subsequently requested vacateur of the appellate court judgment.

The Court stated that the "principal condition to which we have looked [in determining whether vacateur is appropriate] is whether the party seeking relief from the judgment below caused

the mootness by voluntary action." *Id.* at 24, 115 S. Ct. at 391. While exceptional circumstances can justify vacatur, "those exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur." *Id.* at 29, 115 S. Ct. at 393. However, the *Bancorp* Court was very clear that it was not announcing a rule that "vacatur can never be granted when mootness is produced" by way of settlement agreement, *id.*, and the court's decision in this case should not be interpreted otherwise. Additionally, the Court was not addressing the policy considerations which have resulted in the development of mandatory mediation programs.

There is no suggestion in the *Bancorp* opinion or the parties' briefs before the Supreme Court that they were ordered to mediation by the Ninth Circuit. It would be highly unlikely that they were. While the Ninth Circuit now requires mediation for about 40% of eligible cases, its mandatory program was not adopted until 1992, little more than one year before the Ninth Circuit heard the case in 1993.[2] Many circuit courts experimented with settlement programs beginning in 1974, but it was not until 1994 that Federal Rule of Appellate Procedure 33 was amended to provide that an appellate court could require the attendance of clients at mediation sessions and require attorneys to consult with clients to obtain as much settlement authority as feasible. Since then, the circuits that did not have a mediation program have adopted one. More recently, several courts, including the Federal Circuit, have made the program mandatory for a significant number of cases.[3]

---

[2]The precursor to the Ninth Circuit's Settlement Program began in 1984, but the emphasis at that time was on improving presentation of the issues before the court, not on settlement. Over time, the focus shifted to settlement and, in 1992, the Ninth Circuit officially recognized it as a settlement program. MEDIATION & CONFERENCE PROGRAMS IN THE FEDERAL COURTS OF APPEAL 77 n.15 (2d ed. 2006).

[3]*See id.* at 3-13, for an overview of the development of alternative dispute resolution programs in the circuit courts.

In the present case the Federal Circuit placed OWW and Thermo-Ply in the mandatory mediation program.[4] According to the Appellate Mediation Program Guidelines,"[t]he purpose of mediation is a *settlement of the case*. This may include a global settlement." United States Court of Appeals for the Federal Circuit, Appellate Mediation Program Guidelines at 4 (emphasis added); *see also id.* at 6 ("The purpose of the mediation program is to help the parties achieve settlement."). The importance of the program to the court was emphasized by now-retired Chief Judge Michel in his 2009 "State of the Court" speech at the Annual Federal Circuit Bar Association Bench & Bar Conference: "The court's mandatory mediation program continues to grow. It increases our output as much as if we had at least one more active judge."[5]

This court recognizes the intense pressure to settle that can be imposed on, or at the very least perceived by, parties that are ordered to mediation by an appellate court. Although, unlike some courts, the Federal Circuit does not specifically require good faith participation by parties and counsel, one would expect ethical counsel to make their best efforts to comply with the Circuit Court's order. The parties' settlement stems from court-initiated and approved procedures. Given the emphasis placed on alternative dispute resolution by Congress and the judiciary, a *per se* rule barring vacatur as part of the appellate mediator's "tool box" seems short sighted. A more reasoned

---

[4]The Federal Circuit's mediation program, adopted in 2005, was essentially voluntary. The program was amended in 2008, and there are now two routes to mediation. If circuit mediation officers determine that mediation would be appropriate, counsel is required to participate in at least one mediation session. In other words, mediation is mandatory. If, on the other hand, a case is not chosen for the mandatory mediation program, the parties may jointly request that a case be included in the mediation program, so long as the parties are represented by counsel. Here, OWW/Thermo-Ply's appeal was included in the mandatory mediation program.

[5]Former Chief Judge Paul R. Michel, 2009 State of the Court Speech (Jun. 19, 2009), *available at* http://www.cafc.uscourts.gov/images/stories/announcements/2009/soc09.pdf.

4

approach is to examine, on a case-by-case basis, the policy considerations and factors addressed in *Bancorp* and decisions that followed.

**B.      Factors to be considered in deciding whether to vacate**

Courts have applied the principles of *Bancorp* in various situations to determine whether vacateur should be granted. *See, e.g.*, *Aqua Marine Supply v. Aim Machining, Inc.*, 247 F.3d 1216 (Fed. Cir. 2001); *Clever Devices, Ltd. v. Digital Recorders, Inc.*, 2004 WL 1265934 (N.D. Tex. Jun. 3, 2004); *Allen-Bradley Co. v. Kollmorgen Corp.*, 199 F.R.D. 316 (E.D. Wisc. 2001)*; Polymasc Pharmas. v. Alza Corp.*, 2004 WL 633256 (D. Del. Mar. 26, 2004); *Nilssen v. Motorola, Inc.*, 2002 WL 31369410 (N.D. Ill. Oct. 21, 2002). In addition to consideration of whether the parties have caused mootness by voluntary action, other factors considered by these courts include: the parties' desire to avoid any potential preclusive effect; the parties' interest in conserving their resources; the public interest in the orderly operation of the federal judicial system; and the potential to conserve judicial resources.

In the context of mootness resulting from mandatory mediation, it is also worth evaluating, either separately or as part of analyzing the factors set out above, the following: the stage of proceedings at which the judgment in question occurred; the standard of review that will be applied by the Circuit Court if the case is not vacated; and perhaps the complexity of the matter, if that is likely to increase the chance of reversal.

        1.        *The parties' desire to avoid any potential preclusive effect*

The finding of invalidity of most of the claims of the '182 patent has serious consequences for the patent owner. Clearly, OWW and Thermo-Ply now both wish to avoid the preclusive effect of this court's order. This weighs in favor of vacateur.

5

However, the order was published as a slip opinion. *Ohio Willow Wood Co. v. Thermo-Ply, Inc.*, 2009 WL 6499349 (E.D. Tex. Nov. 20, 2009). It is now on the Internet, available to anyone with a computer. Whatever persuasive guidance the order may provide is available to other parties and courts, which reduces the weight of this factor.

2. *The parties' interest in conserving their resources*

If the court vacates the judgment, OWW and Thermo-Ply will avoid the substantial cost of an appeal, and the even greater cost that would be incurred if the case was remanded for trial. On the other hand, OWW will still face costs in the dispute with Alps South, LLC in the United States District Court for the Middle District of Florida, the reexamination proceedings now before the PTO[6], and potential disputes with other parties. This decreases the weight this factor adds in favor of vacateur.

3. *The public interest in the orderly operation of the federal judicial system*

In *Bancorp*, the Supreme Court noted that vacateur is an equitable remedy, and that the Court must "take account of the public interest." 513 U.S. at 26, 115 S. Ct. at 392. This court is squarely faced with a conflict between two important policies affecting court operations. Congress and the judiciary have decided alternative dispute resolution is essential to the function of federal courts and disposition of cases. On the other hand, final judgments end litigation and provide guidance to the parties and public.

---

[6] The PTO issued a Final Office Action in the reexamination on September 3, 2010, finally rejecting most claims of the '182 patent as anticipated and/or obvious over certain prior art references. Only new claims 63 and 64 were found patentable. A number of the patent claims were rejected on the same grounds set forth in this court's summary judgment order: i.e., as obvious over the Silosheath in light of United States Patent No. 4,923,474 to Klasson. OWW filed a notice of appeal with the Board of Patent Appeals and Interferences ("BPAI") on October 4, 2010, which remains pending.

There is a long-standing and very strong public policy in this country favoring mediation and settlement, under both federal and state law. *See, e.g., St. Louis Mining & Milling Co. v. Mont. Mining Co.*, 171 U.S. 650, 656, 19 S. Ct. 61, 63 (1898); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992). The Federal Circuit's Appellate Mediation Program reflects this and, since being amended in 2008, even makes participation mandatory in many cases. It would make little sense to require parties to engage in settlement negotiations at the appellate level, then refuse to accept the settlements reached simply because one of the conditions is vacateur of a trial court order.

Yet, "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacateur." *Bancorp,* 513 U.S. at 26, 115 S. Ct. at 392 (internal quotation omitted). As noted by Circuit Judge Moore in her concurrence, this can be especially important in the case of a judgment of invalidity of a patent. *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 100, 113 S. Ct. 1967, 1977 (1993). A final decision rejecting a party's claims of invalidity is important to the patentee, while a judgment of invalidity allows the public to make use of technology without fear of lawsuits.

In cases where all of the parties involved in an actual dispute over an issue have requested vacateur, the policy considerations favoring settlement may outweigh the advantages of a final judgment. In this case, Alps is engaged in ongoing litigation concerning, and a reexamination attempting to invalidate, the '182 patent. There is a very real chance that other parties, like Silipos, Inc., will become involved in litigation over the patent. The consequences to the public resulting from vacateur are real, not speculative. This factor weighs against vacateur.

4. *The time and effort expended to arrive at the decision to be vacated*

This factor considers both the interest of the parties in conserving resources, as already discussed, and the potential to conserve judicial resources, as discussed below. In a case where full discovery has been completed and the case already tried to a jury, substantial time and effort has been invested by the parties and the court, to say nothing of the burden already imposed on citizens called to jury duty. In comparison, the resources saved by avoiding an appeal may be small.

In this case, judgment was entered on a summary judgment motion filed without even the need for a *Markman* hearing. A relatively small amount of time was involved. Looking at just this case, the relative potential savings to the parties, to this court, and to the Circuit Court are high. This factor favors vacateur.

5. *The complexity of the case and standard of review to be applied on appeal*

Judgments based on jury verdicts are usually given a high measure of deference, so one would expect the chances of reversal to be low. Whether the factual situation is straight-forward, or is complicated, if the claimed error is based on the jury's verdict, vacateur should be rare. At the other extreme is a judgment in a case involving a very complex field of technology that rests entirely on a district court's claim construction. A district court's claim construction is not binding on any other court, and is given not "the slightest iota of deference" by the Circuit Court. *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1351 (Fed. Cir. 2010) (citing *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1451 (Fed. Cir. 1998)). With an estimated 30% of cases being reversed, remanded, or vacated based on erroneous claim construction[7], a lower court's decision, until it is

---

[7]*See, e.g.*, David L. Schwartz, PRACTICE MAKES PERFECT? AN EMPIRICAL STUDY OF CLAIM CONSTRUCTION REVERSAL RATES IN PATENT CASES, 107 Mich. L. Rev. 223, 249 (2008). Prof. Schwartz's study found that, between 1996 and 2007, 29.7% of cases were reversed,

affirmed, has neither added much to the body of pertinent law, nor provided much guidance to the public. In such cases, vacateur may be justified.

This case is somewhere in between these extremes. The parties request vacateur of a summary judgment order, which will be reviewed *de novo*. *Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1344 (Fed. Cir. 2010). However, the field of art involves liners for prosthetics consisting of fabric coated with gel. The finding of obviousness was based in large part on notes in the inventor's own diary concerning a similar product, and the inventor's position at the inventorship hearing that certain aspects of the invention were not novel. Determining whether this court was correct in deciding that there were no genuine issue of material fact remaining for determination, and whether this court properly applied the law to the facts, will likely not require as much of the Federal Circuit's time as review of a lengthy claim construction, construing subtle terms in a patent directed toward cutting edge technology. This factor weighs against vacateur in this case.

6. *The potential to conserve judicial resources*

The parties have stated that their settlement agreement is void if the court does not vacate its invalidity determination. This means that the Federal Circuit will spend time on the present appeal. As noted above, summary judgments of invalidity for obviousness are reviewed *de novo*, meaning there is a possibility the case may be remanded. This would result in a *Markman* hearing and trial. Citizens of this community have always been willing to serve as jurors, but it may not be a fair and proper use of their time to ask them to adjudicate a case that could have been settled.

---

vacated, or remanded because of erroneous claim construction. During that period, several of the busiest districts in the country over that period had rates well in excess of 30%. *Id*. at 246 (i.e., Central District of California, with a 43.5% reverse/vacate/remand rate, and the District of Minnesota, with a 36.4% rate).

At the same time, the court considers the other ongoing litigations that involve OWW, the '182 patent, and patents with a familial relationship to the '182 patent. It is possible that the parties will settle even without vacatur. It is also possible that the invalidity judgment will be affirmed. If that happens, the Florida district court and the courts in which other disputes involving these patents would be filed can devote their time to other matters. Much of the appeal to the BPAI may become moot. Even if the Federal Circuit reverses and remands, the appellate opinion may offer some guidance to the district courts examining the '182 patent that will make the cases easier to adjudicate.

In short, while fewer resources will be expended by this court if the motion to vacate is granted, other courts will have to revisit the same issues. This factor weighs against granting the motion to vacate.

**C.     Conclusion**

The invalidity judgment in this case did not require extensive time from this court, and did not require lengthy service from jurors. Given the value the judicial system places on mediation, a vacateur that affected only OWW and Thermo-Ply, saved the Federal Circuit from hearing the appeal, and finally disposed of the dispute could be justified. But this patent is the subject of litigation in other courts, and is involved in reexamination. The judgment of invalidity is now ripe for consideration by the Circuit Court. Vacating the judgment will impose costs on other parties and courts. It will only delay, not obviate the need for, consideration of the issue by the Federal Circuit.

The court concludes that this is not a case where the circumstances justify vacating its summary judgment order that many of claims of the '182 patent are invalid as obvious.

IT IS THEREFORE ORDERED that The Ohio Willow Wood Co. and Thermo-Ply, Inc.'s Joint Motion to Vacate is DENIED.

So **ORDERED** and **SIGNED** this **3** day of **February, 2011.**

_____
Ron Clark, United States District Judge